UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CHARLES REINHARDT,<br><br>        Plaintiff,<br><br>        v.<br><br>IKONICS CORPORATION, WILLIAM C. ULLAND, GLENN SANDGREN, MARIANNE BOHREN, LOCKWOOD CARLSON, JEFFREY D. ENGBRECHT, ERNEST M. HARPER, JR., DARRELL B. LEE, and GREGORY W. JACKSON,<br><br>        Defendants. | Case No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

---

Plaintiff Charles Reinhardt ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against IKONICS Corporation ("IKONICS" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. By the action, Plaintiff seeks to enjoin the vote on a proposed transaction pursuant to which TeraWulf Inc. ("TeraWulf") will merge the Company through IKONICS's subsidiaries Telluride Holdco, Inc. ("Holdco"), Telluride Merger

Sub I, Inc. ("Merger Sub I"), and Telluride Merger Sub II, Inc. ("Merger Sub II") (the "Proposed Transaction").[1]

2. On June 25, 2021, IKONICS announced its entry into an Agreement and Plan of Merger dated the same day (the "Merger Agreement"). That agreement provides IKONICS stockholders will receive (a) one share of Holdco common stock; (b) one contractual contingent value right ("CVR") to be issued by Holdco; and (c) $5.00 in cash for each share of Company common stock they own (the "Merger Consideration").[2]

3. On November 12, 2021, IKONICS filed a Prospectus on Form 424B3 (the "Prospectus") with the SEC. The Prospectus, which recommends that IKONICS stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Prospectus in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Prospectus is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material

---

[1] Non-party TeraWulf was formed to own and operate fully integrated environmentally clean cryptocurrency mining facilities in the United States. TeraWulf will provide domestically produced bitcoin powered by more than 90% zero-carbon energy with a goal of utilizing 100% zero-carbon energy. Its mining facility in New York is expected to be operational in the fourth quarter of 2021 and its mining facility in Pennsylvania recently commenced site work with targeted operation in the second quarter of 2022. Non-party Holdco is a Delaware corporation and a wholly owned subsidiary of IKONICS, formed for the purpose of holding IKONICS and TeraWulf as wholly owned subsidiaries following completion of the mergers. Non-party Merger Sub I is a wholly owned subsidiary of Holdco. Non-party Merger Sub II is a wholly owned subsidiary of Holdco.

[2] IKONICS stockholders will own approximately 2% of Holdco's common stock upon completion of the Proposed Transaction. TeraWulf stockholders will own the remaining 98%.

information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, IKONICS's common stock trades on the Nasdaq Capital Market LLC, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a stockholder of IKONICS.

10. Defendant IKONICS is a Minnesota headquartered at 4832 Grand Avenue, Duluth, Minnesota 55807. The Company's shares trade on the Nasdaq Capital Market LLC under the ticker symbol "IKNX."

11. Defendant William C. Ulland ("Ulland") is nd has been Chairman of the Board since 1976 and a director of the Company since 1972. Defendant Ulland previously served as the Company's Chief Executive Officer ("CEO") from February 2000, and as President from December 2000, until his retirement from those positions in February 2020.

3

12. Defendant Glenn Sandgren ("Sandgren") is and has been CEO and a director of the Company since February 10, 2020.

13. Defendant Marianne Bohren ("Bohren") is and has been a director of the Company since 2016.

14. Defendant Lockwood Carlson ("Carlson") is and has been a director of the Company since 2009.

15. Defendant Jeffrey D. Engbrecht ("Engbrecht") is and has been a director of the Company since 2016.

16. Defendant Ernest M. Harper, Jr. ("Harper") is and has been a director of the Company since 2012.

17. Defendant Darrell B. Lee ("Lee") is and has been a director of the Company since 2012.

18. Defendant Gregory W. Jackson ("Jackson") is and has been a director of the Company since 2017.

19. Defendants identified in paragraphs 11-19 are referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

20. On June 25, 2021, IKONICS and TeraWulf jointly announced in relevant part:

EASTON, Maryland & DULUTH, Minnesota – June 25, 2021 – TeraWulf Inc. ("TeraWulf"), poised to become a best-in-class bitcoin mining company, announced today it expects to become a Nasdaq-listed company through a business combination with IKONICS Corporation (Nasdaq: IKNX), a Duluth, MN imaging technology company. The companies have entered into a definitive merger agreement to combine under a new holding company, which will change its name to TeraWulf Inc. and is expected to be listed on The Nasdaq Stock Market LLC under the trading symbol "WULF."

Environmental, Social, and Governance (ESG) Focused Cryptocurrency Mining Company

TeraWulf is positioned to generate environmentally sustainable bitcoin at an industrial scale in the U.S. using over 90% zero-carbon energy. With 60,000 state-of-the-art miners on order, TeraWulf expects to have 50 MW of mining capacity online this year, and consistent with its buildout plan, expects to have 800 MW mining capacity deployed by 2025, enabling over 23 EH/s of expected hashrate.

TeraWulf is leveraging its management team's decades of experience in energy supply optimization, operations and engineering to create a premier platform for sustainable cryptocurrency mining. In addition, TeraWulf plans to implement its proven model for large cryptocurrency mine development and operations, which will help ensure TeraWulf can scale efficiently. With an institutional commitment to ESG principles and a target of 100% zero-carbon energy utilization, TeraWulf is positioned to be a leading miner of sustainable bitcoin globally.

Paul Prager, Chairman & Chief Executive Officer of TeraWulf, said, "TeraWulf represents an exciting new paradigm for cryptocurrency mining, which is built on a significant strategic advantage to utilize reliable, secure and low-cost sustainable energy sources to support our bitcoin mining activities. We have a talented management team with a proven track record and we are ready to rapidly scale due to an established supply chain and strong partner relationships. Site work is underway at the Company's mining facilities in New York and Pennsylvania with competitive power supply agreements already in place. As we prepare TeraWulf to trade on the public market, we are confident that we have the in-house technology, infrastructure and operations expertise to deliver unparalleled value for shareholders."

Nazar Khan, Chief Operating Officer, added, "Our team's unique access to energy assets and deep sector expertise in the wholesale electricity markets allows us to quickly develop a large-scale cryptocurrency mining platform that can help facilitate and can expedite the electric grid's transition to a zero-carbon future. Sited and managed appropriately, mining operations provide resiliency to the electric grid while leading the rapid development of the global fintech infrastructure."

Glenn Sandgren, Chief Executive Officer of IKONICS, said, "We are pleased to have reached this agreement with TeraWulf and look forward to partnering with them. This transaction provides ideal outcomes for our shareholders, customers and employees. It delivers our shareholders the opportunity to realize a substantial upfront cash payment while continuing to benefit from the value of our legacy imaging business, and provides them with the opportunity to participate in the potential upside of TeraWulf at an exciting time for the cryptocurrency mining space. The agreement will be instrumental in securing the long-term viability of IKONICS's legacy business, allowing it to continue to meet the needs of our customers with a secure supply of our high quality products in addition to continued employment opportunities for our workforce."

TeraWulf's Leading ESG Focus

TeraWulf's aim is to be the most environmentally sustainable bitcoin mining company focused on ESG through its purpose-driven business practices, determined clean energy goals, and support for its communities. TeraWulf is committed to diversity, equity and inclusion at all levels of the organization and is proud of its highly qualified, diverse management team. As an industry leading producer of bitcoin with a targeted path of zero-carbon energy utilization, TeraWulf intends to maintain a high level of transparency, reliability, and environmental stewardship across its operations and throughout its supply chain.

Kerri Langlais, TeraWulf's Chief Strategy Officer, said, "Our core focus on ESG sets us apart from our competitors and ties directly to our business success. We are confident that by integrating flexible baseload energy demand into the electric grid, we will accelerate the transition to a more resilient, stable and sustainable energy future while generating attractive investor returns and tangible benefits, including job creation, for our communities."

Transaction Overview

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, each outstanding share of IKONICS common stock will receive $5.00 in cash, one CVR, and one share of the combined company's common stock. Through the CVRs, which will not be publicly traded, the IKONICS shareholders will be entitled to received 95% of the net proceeds from any sale of IKONICS's legacy business completed during the 18 months following the closing of the business combination, and will expire at the end of such 18 month period with respect to any portion of IKONICS's legacy business which has not been sold. The shares of the combined company's common stock to be received by the IKONICS shareholders will collectively represent 2% of the combined company's pro forma common equity ownership. As of March 31, 2021, IKONICS had a net book value of $11.6 million, cash of $4.4 million and working capital of $4.1 million.

Following consummation of the transaction, the legacy business of IKONICS will be operated consistent with past practices but will be positioned for sale on terms that are acceptable to the Board of Directors of the combined company.

The transaction is expected to close in the second half of 2021, subject to the receipt of regulatory approvals, the approval of IKONICS and TeraWulf shareholders, and other customary closing conditions.

Management and Board of Directors

The combined company will be led by Paul Prager as Chairman and Chief Executive Officer. In addition, several members of the existing TeraWulf leadership team are expected to serve on the combined company's management team, including:

- Nazar Khan, Chief Operating Officer;
- Kerri Langlais, Chief Strategy Officer;
- Ken Deane, Chief Financial Officer; and
- Stefanie Fleischmann, Chief Legal Officer.

TeraWulf's executive team has worked together for nearly 15 years in the energy infrastructure space with a proven track record of risk management and investment performance.

Upon completion of the transaction, all members of the IKONICS Board of Directors will resign and be replaced by persons to be designated by TeraWulf.

Transaction Materials

A presentation and additional materials regarding the transaction are available on TeraWulf's website.

Advisors

Paul Weiss, Rifkind, Wharton & Garrison LLP is serving as legal advisor and Moelis & Company LLC is serving as financial advisor to TeraWulf. Faegre Drinker Biddle & Reath LLP is serving as legal advisor and Northland Capital Markets is serving as financial advisor to IKONICS.

**The Prospectus Contains Material Misstatements or Omissions**

21. The defendants filed a materially incomplete and misleading Prospectus with the SEC and disseminated it to IKONICS's stockholders. The Prospectus misrepresents or omits material information necessary for the Company's stockholders to make an informed voting or appraisal decision on the Proposed Transaction.

22. Specifically, as set forth below, the Prospectus fails to provide Company stockholders with material information or provides them with materially misleading information concerning (a) TeraWulf's financial projections and the valuation analyses underlying the fairness opinion provided by Northland Securities, Inc. ("Northland"); and (b) the background of the Proposed Transaction.

*Material Omissions Concerning the Company's Projections and the Financial Analyses Relied on by the Board*

23. The Prospectus omits material information regarding the Company's financial projections, including TeraWulf's forecasted unlevered free cash flows and all underlying line items. *See* Proxy Statement at 86.

24. The Prospectus omits material information regarding the data and inputs underlying the valuation analyses performed by Northland.

25. The Prospectus describes Northland's fairness opinion and the various underlying valuation analyses. That description, however, omits key inputs and assumptions forming the bases of these analyses. The absence of this material information precludes the Company's public stockholders from fully understanding the Northland's work. As a result, IKONICS stockholders cannot assess what significance to place on Northland's fairness opinion in determining whether to approve the Proposed Transaction or otherwise act.

26. With respect to Northland's *IKONICS Selected Public Companies Analysis*, *IKONICS Selected Precedent Transactions Analysis*, and *TeraWulf Selected Public Companies Analysis*, the Prospectus fails to disclose the individual multiples and financial metrics for each of the companies and transactions analyzed.

27. With respect to Northland's *TeraWulf Discounted Cash Flow Analysis*, the Prospectus fails to disclose: (a) the unlevered free cash flows TeraWulf could generate over the calendar years ending December 31, 2021 through December 31, 2027; (b) calendar year 2027 unlevered free cash flows used to calculate the terminal values for TeraWulf; (c) the implied terminal values for TeraWulf; and (d) the inputs and assumptions underlying the range of discount rates utilized in connection with the analysis.

28. The omission of this information renders the statements in the "Financial Forecasts" and "Opinions of Financial Advisor to IKONICS" sections of the Prospectus false and/or materially

misleading in contravention of the Exchange Act. Indeed, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

***Material Omissions Concerning the Background of the Proposed Transaction.***

29. The Prospectus fails to disclose material information concerning the background leading to the Proposed Transaction, including whether the confidentiality agreement between the Company and "Party A" (or any other party during the process) is s still in effect and/or contains a "don't ask, don't waive" standstill provision that is presently precluding Party A or any potential buyer from making a topping bid for the Company.

30. The disclosure of the terms of the confidentiality agreements is crucial to IKONICS stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

31. The omission of this information renders the statements in the "Background of the Mergers" section of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

32. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Prospectus. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other IKONICS stockholders will be unable to make an informed voting or appraisal decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

33. Plaintiff repeats all previous allegations as if set forth in full.

34. During the relevant period, defendants disseminated the false and misleading Prospectus specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

35. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Prospectus. The Prospectus was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Northland. The defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

36. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

37. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

38. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

39. Plaintiff repeats all previous allegations as if set forth in full.

40. The Individual Defendants acted as controlling persons of IKONICS within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of IKONICS, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Prospectus at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Prospectus.

43. In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Prospectus purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, IKONICS's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of IKONICS, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to IKONICS stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 23, 2021            **WEISSLAW LLP**

By  */s/ Richard A. Acocelli*
Richard A. Acocelli
305 Broadway, 7th Floor
New York, New York 10007
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**LONG LAW, LLC**
Brian D. Long
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com